**Donald E. Bradley, Calif. SBN. 145037**
dbradley@crowell.com
Crowell & Moring LLP
Three Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
 Attorneys for Defendant Trans Union LLC
 *Admitted pro hac vice (10/25/04)*

**Jennifer Bouman, OSBN No. 00028**
jbouman@bullardlaw.com
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway, Suite 1900
Portland, Oregon 97205
Telephone:  (503) 248-1134
Facsimile:  (503) 224-8851
 Attorneys for Defendant Trans Union LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| SAMI ROTHERY, | CASE NO. CV-04-312-ST |
|     Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION OF INDIVIDUAL CLAIMS** |
|  vs. | |
| **EQUIFAX CREDIT INFORMATION SERVICES, INC.**, a foreign corporation; **TRANS UNION, LLC,** a foreign limited liability company; **EXPERIAN INFORMATION SOLUTIONS, INC.**, a foreign corporation, | By Defendant Trans Union LLC [Fed. R. Civ. Proc. 56] |
|     Defendants. | Action Filed:  03/03/2004 |

## I.    INTRODUCTION

Plaintiff sued Defendant Trans Union LLC ("TU") for alleged violations of the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681 et seq.  She claims her identity was mixed with that of another individual beginning in 1995, and that after she disputed the inaccurate information, TU negligently and willfully continued to report the inaccurate information.  Plaintiff claims that TU failed to maintain reasonable procedures pursuant to Section 1681e(b) and that it failed to comply with its reinvestigation duties under Section 1681i.  Plaintiff claims she suffered damages as a result.

Plaintiff's two FCRA claims against TU fail because (1) TU did not mix any information concerning another individual on plaintiff's credit report and therefore, plaintiff cannot maintain a reasonable procedures claim under Section 1681e(b) against TU; and (2) TU fully complied with its reinvestigation duties under Section 1681i of the FCRA.

## II.    STATEMENT OF FACTS[1]

Plaintiff's complaint is extremely vague with respect to the exact nature of the inaccuracies appearing in her credit file.  The only detail plaintiff gives is that beginning in 1995, her "identity became mixed with that of another in one or more of defendant's computer databases."  Complaint, ¶ 4.  Through conversations and correspondence with Plaintiff, TU has learned that she believes her identity was mixed with an individual named Samuel Weyer and that TU reported information concerning Mr. Weyer in her credit file.

### A.    The Credit Reporting Industry.

TU is a national credit reporting agency that provides consumer credit reports to subscribers who use the information to make credit-related decisions.  See Declaration of Liza Nicodemus ("Nicodemus Decl."), ¶ 2.  TU is one of three national credit reporting

---

[1]    TU filed a separate statement of undisputed facts herewith.

agencies along with Equifax Credit Information Services, Inc. ("Equifax") and Experian Information Solutions, Inc. ("Experian").  <u>See</u> Nicodemus Decl., ¶ 2.

TU collects commercial information from its subscribers and includes this information on credit reports.  <u>See</u> Nicodemus Decl., ¶ 4.  Subscribers report credit information concerning individual consumers to TU ("tradelines").  <u>See</u> Nicodemus Decl., ¶ 4.  When reporting this credit information, the credit grantor includes the consumer's identifying information associated with that particular tradeline.  <u>See</u> Nicodemus Decl., ¶ 4.  TU stores credit tradelines and public record information in connection with the consumer's identifying information in its database.  <u>See</u> Nicodemus Decl., ¶ 4.

When a customer of TU requests a consumer's credit report, it supplies identifying information concerning that consumer to TU.  <u>See</u> Nicodemus Decl., ¶ 5.  TU inputs the consumer's identifying information into its database and all of the tradelines corresponding to that consumer's identifying information are retrieved and compiled into that consumer's credit report.  <u>See</u> Nicodemus Decl., ¶ 5.

In 2003, when more than one consumer's credit information sufficiently corresponded to the identifying information that was input, TU prepared separate consumer reports and delivered them to the customer.  <u>See</u> Nicodemus Decl., ¶ 6.  When TU furnished more than one consumer report to the customer, TU clearly identified the separate consumer reports as potentially belonging to different individuals.[2]  <u>See</u> Nicodemus Decl., ¶ 6.

TU's policy is always to investigate a consumer's dispute of reported information, and to correct all inaccuracies brought to its attention.  <u>See</u> Nicodemus Decl., ¶ 7.  When a consumer submits a dispute to TU, the dispute is logged and the disputed item and the nature of the dispute are recorded on a consumer dispute verification form

---

[2]    TU's policy has since changed and it no longer delivers more than one file to a customer in response to a request for a consumer's credit report.

("CDV"), along with the consumer's name, address, and social security number, if available.  See Nicodemus Decl., ¶ 7.

If a consumer disputes the appearance of private creditor information on a credit report (as opposed to public record information), TU transmits the CDV to the creditor with a request for verification and correction, if necessary.  See Nicodemus Decl., ¶ 8.

After receiving creditors' responses to CDVs, TU reviews the consumer's disclosure, and makes changes or deletions, as appropriate.  See Nicodemus Decl., ¶ 9.  TU then sends an updated disclosure to the consumer advising of the results of the investigation within thirty days of receipt of the dispute.  See Nicodemus Decl., ¶ 10.

### B.    Plaintiff's Contacts with TU.

On July 24, 2002, TU received a telephone call from plaintiff.  See Nicodemus Decl., ¶ 11.  Plaintiff requested her consumer disclosure and requested that TU add a fraud alert to her credit file.  See Nicodemus Decl., ¶ 11.  In response to plaintiff's request, TU updated plaintiff's telephone and address information, and added a fraud victim alert to her credit file with a four-year expiration date.  See Nicodemus Decl., ¶ 11.  Plaintiff did not dispute the accuracy of any accounts appearing on her credit file at that time.  See Nicodemus Decl., ¶ 11.  TU mailed a copy of plaintiff's consumer disclosure to her on the same day.  See Nicodemus Decl., ¶ 11.

Between July 24, 2002, and March 10, 2003, TU has no record of receiving any communications from plaintiff.  See Nicodemus Decl., ¶ 12.  On March 10, 2003, TU received a dispute from plaintiff via TU's website.  See Nicodemus Decl., ¶ 12.  Plaintiff disputed the first name of "Samuel" and alias of "Samuel J. Weyer" as not hers.  See Nicodemus Decl., ¶ 12.  She also disputed the address of 4400 SE Naef Rd, Apt. 28, in Portland, Oregon.  See Nicodemus Decl., ¶ 12.  Lastly, plaintiff disputed the ownership of four accounts she believed were appearing on her credit file:

- Capital One #529107137830
- Citifinancial #6073723526106518

- U.S. Bancorp #5708379159; and

- Washington Mutual #54569757.

<u>See</u> Nicodemus Decl., ¶ 12.

On March 17, 2003, TU generated and reviewed plaintiff's current consumer disclosure. <u>See</u> Nicodemus Decl., ¶ 13. The "AKA" Samuel Weyer was not appearing on plaintiff's credit file. <u>See</u> Nicodemus Decl., ¶ 13. The Capital One account was also not appearing on Plaintiff's credit file. <u>See</u> Nicodemus Decl., ¶ 13. The Citifinancial, US Bancorp, and Washington Mutual accounts were not derogatory but instead showed that plaintiff was "paying as agreed." <u>See</u> Nicodemus Decl., ¶ 13.

Plaintiff's March 17, 2003, disclosure also showed that there were four adverse accounts (collections, late payments, and charge-offs) appearing on her credit file. <u>See</u> Nicodemus Decl., ¶ 14. She did not dispute these four accounts with TU. <u>See</u> Nicodemus Decl., ¶ 14.

TU sent CDVs to Washington Mutual, Citifinancial, and U.S. Bancorp to reinvestigate the accuracy of the information being reported regarding plaintiff. <u>See</u> Nicodemus Decl., ¶ 15.

On April 7, 2003, TU completed its investigation. <u>See</u> Nicodemus Decl., ¶ 16. Citifinancial and Washington Mutual did not respond to the CDV within thirty days so TU deleted these accounts. <u>See</u> Nicodemus Decl., ¶ 16. TU deleted the U.S. Bancorp account based on the age of the account. <u>See</u> Nicodemus Decl., ¶ 16.

On April 7, 2003, TU mailed plaintiff a copy of her consumer disclosure reflecting the results of TU's investigation. <u>See</u> Nicodemus Decl., ¶ 17. The updated disclosure showed the deletion of three accounts, and that plaintiff's address had also been updated pursuant to her request. <u>See</u> Nicodemus Decl., ¶ 17.

III.    **ARGUMENT**

A.    **Standard of Review**

A party is entitled to summary judgment under the Federal Rules of Civil Procedure where "there is no genuine issue of material fact and the party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A court grants summary judgment in favor of the defendant when the plaintiff is unable to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 318, 322, 106 S. Ct. 2548 (1986).  Only disputes over material facts, or those facts that might ultimately affect the outcome of the lawsuit under governing law, will preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A genuine issue of material fact exists only if there is sufficient contradictory evidence such that a reasonable jury could return a verdict for the non-moving party.  Id.

The burden of establishing the non-existence of a genuine issue is on the moving party.  Celotex Corp., 477 U.S. at 322.  Once this burden is met, the non-movant must then set forth specific facts showing that there remains a genuine issue of material fact to be determined at trial.

A party may seek summary judgment "as to all or any part" of a claim.  Fed. R. Civ. P. 56(b).  The court may grant summary adjudication as to specific issues without granting judgment as to an entire cause of action if it will narrow issues for trial.  Fed. R. Civ. P. 56(d); First National Ins. Co. v. F.D.I.C., 977 F. Supp. 1051, 1055 (S.D. Cal. 1997).

As demonstrated below, Plaintiff's claims fail as a matter of law.

**B.    TU Did Not Violate Section 1681e(b) Because Plaintiff Cannot Show that TU Maintained Unreasonable Procedures, and Because Plaintiff Cannot Prove that Her Damages, If Any, Were Attributable to TU's Actions or Omissions.**

TU did not negligently or willfully violate Section 1681e(b) of the FCRA.  The FCRA § 1681e(b) provides,

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

"Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information.  [citations omitted].  In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995).  Moreover, the FCRA "does not render consumer reporting agencies strictly liable for inaccuracies in a report."  Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir. 1979).  "There must be a showing that the inaccuracy resulted from the agency's failure to follow reasonable procedures to assure maximum possible accuracy."  Id. at 814-15.

"Evaluating the reasonableness of an agency's procedures involves balancing the potential harm from the inaccuracy against the burden on the agency of safeguarding against such inaccuracy."  Whelan, 862 F. Supp. at 831.  "The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances."  Spence v. TRW, Inc., 92 F.3d 380, 383 (6th Cir. 1996).  Furthermore, credit reporting agencies are entitled to rely on the information reported to them by reputable furnishers of information so long as the information appears on its face to be credible and the credit reporting agency has no reason to believe otherwise.  See Federal Trade Commission Commentary on the Fair Credit Reporting Act, 16

C.F.R., Part 600, Appendix, § 607, p. 517 (2002).  It is Plaintiff's burden to show that TU's procedures were unreasonable.  See Whelan, 862 F. Supp. at 829.

With respect to damages under § 1681e(b), courts have held that "[w]ithout a causal relation between the alleged violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages . . . .'"  Crabill v. Trans Union LLC, 259 F.3d 662, 664 (7th Cir. 2001).

Thus, to prevail on a cause of action under Section 1681e(b), plaintiff must allege and prove (1) that an inaccuracy existed on her credit report; (2) that the credit report was inaccurate as a result of unreasonable procedures on the part of the credit reporting agency, and (3) that the unreasonably inaccurate credit report caused plaintiff cognizable harm.

> **1.    Plaintiff's Claims Against TU Fail Because She Cannot Rely on a Tri-Merge Credit Report Prepared by Another Entity to Support Her Claims that TU Failed to Maintain Reasonable Procedures in the Preparation of a TU Credit Report.**

Plaintiff claims that as a result of TU's unreasonable procedures, TU was mixing plaintiff's credit information with that of another individual named Samuel Weyer, and that she suffered damages as a result.  Complaint, ¶ 4.  However, Plaintiff has no evidence that TU ever reported any information concerning Mr. Weyer on any TU credit report.  See Nicodemus Decl., ¶ 15.  The only evidence plaintiff proffers to support her claim that TU mixed her information with Weyer information are "tri-merge" credit reports.[3]

However, inaccuracies appearing in a tri-merge report prepared by another entity cannot be attributed to, and thus cannot form the basis of a claim against, a credit

---

[3]    Typically, tri-merge reports are prepared by companies (frequently mortgage lenders) that receive consumer credit information from all three national credit reporting agencies and merge the consumer credit data into a single report.  See Nicodemus Decl., ¶3.

reporting agency.  Crabill v. Trans Union LLC, 259 F.3d 662, 664 (7th Cir. 2001).

In Crabill, plaintiff sued TU for the alleged mixing of his credit information with that of his

brother.  See id. at 663.  Plaintiff's and his brother's surnames were identical, their first

names both began with "J," and their social security numbers differed by only one digit.

See id.  Thus, when a request for plaintiff's credit information was made, TU's computer

program delivered both files to the requestor because:

> . . . two files with similar though not identical identifying data may actually be
> referring to the same person, the differences in data being the result of errors in
> data collection or compilation, and so it was useful for creditors to have both
> Crabills' files and make their own judgment of whether they are different persons.

See id.  Plaintiff was denied credit by a lender after it reviewed a tri-merge report

containing both his and his brother's credit information.  See id.

The trial court granted summary judgment in favor of TU and plaintiff appealed.

See id.  The Seventh Circuit affirmed.  See id.  It held "the statutory duty to maintain

reasonable procedures to avoid inaccuracy does not require a credit agency to

disregard the possibility that similar files refer to the same person."  See id.  In so

holding, the Court held as a matter of law that TU maintained reasonable procedures

and that inaccuracies in a tri-merge "cannot be attributed to Trans Union."[4]  This

holding is sensible for the credit reporting agency itself cannot control what the merging

company does with the information, and the merging company is itself subject to the

FCRA.

---

[4]     The Crabill court ultimately concluded that there was a question of fact
concerning the reasonableness of TU's procedures because plaintiff's previous
complaints had given TU notice of the possible confusion that might result when
two files are delivered to a requestor.  However, the court also concluded that
plaintiff could not show that he suffered any damages causally related to TU's
actions, and therefore, TU was not liable as a matter of law.  The result should be
the same here.  Even if there is an issue as to TU's notice of the confusion
surrounding the Weyer information, plaintiff cannot possibly link any damages to
TU's alleged unreasonable procedures.  See Section III.B.2 below.

No Ninth Circuit decision has ruled to the contrary, and held a credit reporting agency liable for information published by a third party "merger."  Crabill appears to be the only reported decision on the issue and nothing in Crabill is inconsistent with Guimond, or any other Ninth Circuit authority.

Here, plaintiff claims TU was reporting Weyer information in her credit file. However, the name Samuel Weyer, whether as an "AKA" or otherwise, does not appear anywhere in a TU credit report, i.e., in a report that was prepared and compiled by TU. The only evidence plaintiff has that Weyer information was related to her is contained in tri-merge credit reports that she produced.  See Bradley Decl., Exhibits A - H.  However, as the Court in Crabill rightfully held, a third party's inclusion of another consumer's information in a consumer's tri-merge report cannot be attributed to TU.  Accordingly, TU's actions were reasonable as a matter of law.

Moreover, even assuming the tri-merges produced by plaintiff are reliable, they **do** **not** even suggest that TU reported any Weyer information.[5]  See Bradley Decl., Exhibits A – G.  For example, in Exhibit A, on page Rothery 00063, the source of the Weyer information is listed.  That page demonstrates that only one credit reporting agency, Equifax, was reporting Weyer information.  Although TU forwarded more than one file to the preparer of the tri-merge, none of the files from TU have anything to do with Mr. Weyer.  In Exhibit B, on page Rothery 00122, Mr. Weyer's name appears as an "AKA" but once again, only Equifax reported this information.  In Exhibit E, on page Rothery 00163, on Exhibit F, on page Rothery 00168, and Exhibit G, on page Rothery 00190, it is the same - - Equifax reported Weyer information but TU did not.  Bottom line, TU was not reporting Weyer information to any of the companies that prepared the tri-merge reports concerning plaintiff.  Thus, even if plaintiff could maintain a reasonable

---

[5]      It is plaintiff's burden to prove TU failed to maintain reasonable procedures and that TU reported an inaccuracy on her credit file.  It is not TU's duty to prove the opposite.

procedures claim against TU for furnishing two related files, plaintiff cannot prevail because TU did not in fact report any Weyer information.

###### 2. Plaintiff Did Not Suffer Damages Proximately Caused by TU's Allegedly Unreasonable Procedures and Therefore, Cannot Prevail Under Section 1681e(b).

Plaintiff cannot prevail on her reasonable procedures claim unless she can link the alleged violation of the FCRA to a "loss of credit or some other harm." Crabill, 259 F.3d at 664. Therefore, even if plaintiff somehow demonstrated that TU reported Weyer information, and even if plaintiff showed that it was unreasonable to do so, she would still have to show that she suffered damages directly related to that unreasonable procedure. Plaintiff cannot make this showing.

Out of 292 pages produced by plaintiff, one document suggests that she was denied credit (Bates No. Rothery 00288). See Bradley Decl., Exhibit J. It is a letter from Citibank dated February 28, 2003, stating that Citibank denied her for a credit card loan. The letter states, "Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below . . . Equifax Credit Information Service." See Bradley Decl., Exhibit J. Thus, plaintiff's only documentary evidence of damages is unrelated to a TU credit report.[6]

While a consumer may recover damages for emotional distress under the FCRA (See Guimond, 45 F.3d at 1333), plaintiff must still demonstrate that her damages bear some relation to the alleged violation of the statute. Here, despite plaintiff's claims to the contrary, TU did not report any Weyer information in response to a request for plaintiff's credit report. Therefore, plaintiff's damages, if any, could not have been

---

[6]     In response to TU's interrogatories concerning damages, plaintiff claimed she was turned down for a loan from Freedom Mortgage in July 2002. See Bradley Decl., Exhibit I, Interrogatory No. 11. However, plaintiff's 292 pages of documents do not contain any evidence that Freedom Mortgage denied her credit, much less evidence that the denial was causally linked to a TU credit report.

caused by TU.  Accordingly, TU is entitled to summary judgment on plaintiff's

reasonable procedures claim.[7]

C. **Plaintiff Cannot Prevail Under Section 1681i Because TU Properly Responded to Plaintiff's March, 2003, Dispute.[8]**

TU did not negligently and/or willfully violate Section 1681i of the FCRA.

Section 1681i(a)(1)(A) provides,

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of dispute from the consumer.

There are six required elements to a successful Section 1681i claim:

(1) The plaintiff's credit file must contain inaccurate or incomplete information.

See Section 1681i(a)(1); <u>Cahlin v. Gen'l Motors Acceptance Corp.</u>, 936

F.2d 1151, 1160 (11th Cir. 1991); <u>Thomas v. Trans Union LLC</u>, 197 F.

Supp. 2d 1233, 1238 (D. Or. 2002).

---

[7]    Moreover, when plaintiff submitted her first dispute to TU in March, 2003, three other derogatory accounts appeared on her credit file that she never disputed with TU.  Hence, it is likely that any alleged denials of credit or other harm to plaintiff were caused by the appearance of those undisputed accounts, and not the allegedly unreasonable procedures of TU.

[8]    Plaintiff claims that she also sent disputes to TU on or about July 24, 2002, and January 26, 2003 and that TU received those disputes.  See Bradley Decl., Exhibit I, Interrogatory No. 7.  TU denies however that plaintiff sent any other disputes of information besides the March, 2003, dispute and therefore, there is a genuine issue of material fact with respect to those other disputes.  Accordingly, TU's motion under Section 1681i is for summary adjudication with respect to plaintiff's March, 2003, dispute only and is intended to narrow the issues in this action for trial.

(2)     The plaintiff must have notified the credit reporting agency directly of the inaccurate or incomplete information.  See id.; Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 833 (E.D.N.Y. 1994).

(3)     The plaintiff's dispute must not be frivolous or irrelevant.  See id. at Section 1681i(a)(3).

(4)     The credit reporting agency failed to properly respond to the plaintiff's dispute.  See id. at Section 1681i(a)(1), (2) and (6).

(5)     The failure to properly respond was unreasonable.  Thomas, 197 F. Supp. 2d at 1238.

(6)     The failure to properly respond caused the plaintiff to suffer damages.  See id. at 1236.

Here, TU's only record that plaintiff disputed allegedly inaccurate accounts in her credit file is the letter dated March 10, 2003.  Plaintiff does not dispute that she sent a letter concerning four accounts appearing on her credit file nor does she dispute that TU received it and responded to her within thirty days.  See Bradley Decl., Exhibit I, Interrogatory No. 7.

Thus, the undisputed facts with respect to the March 10, 2003, dispute are as follows:

- TU received plaintiff's dispute letter via TU's website on March 10, 2003.

- On March 17, 2003, TU sent CDVs to investigate three of the four disputed accounts.[9]

---

[9]     Plaintiff will likely argue that TU violated Section 1681i(a)(2)(A) because it failed to send notification of plaintiff's dispute to the furnishers of the information within five business days of receiving plaintiff's dispute.  Plaintiff is mistaken.  TU received plaintiff's dispute on Monday, March 10, 2003, and on the fifth business day following receipt of the dispute, i.e. on Monday, March 17, 2003, TU sent notification of plaintiff's dispute to the furnishers.  Pursuant to FRCP 6, the day notice was received is not included in the five business day period.  In any event, even if TU violated this section, plaintiff cannot link any damages to this

- On April 7, 2003, TU deleted three of the four disputed accounts and sent plaintiff an updated disclosure showing the results of the investigation on the same day.  The fourth disputed account (the Capital One account) was not appearing on plaintiff's credit file.

Therefore, pursuant to Section 1681i, TU is not liable under Section 1681i and is entitled to summary adjudication with respect to the March, 2003, dispute.

## IV.    CONCLUSION

For the foregoing reasons, TU respectfully requests that this Court grant summary adjudication with respect to plaintiff's 1681i claim as it relates to her March 10, 2003, dispute, and summary adjudication with respect to plaintiff's 1681e(b) claims in their entirety.

DATED:    December 1, 2005              CROWELL & MORING LLP


                                        By:    s/ Donald E. Bradley
                                        Donald E. Bradley (Calif. SB 145037)
                                        (949) 263-8400
                                        Attorneys for Defendant
3712232 (087827.0000318)                TRANS UNION LLC

---

delay because TU responded to her dispute within thirty days as allowed by Section 1681i(a)(1)(A).