IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMI ROTHERY, an individual,

                Plaintiff,                    CV-04-312-ST

        v.                              FINDINGS AND
                                                  RECOMMENDATION

TRANS UNION, LLC, a foreign corporation,

                Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

      In her Amended Complaint, plaintiff, Sami Rothery ("Rothery"), alleges that defendant,

Trans Union, LLC ("Trans Union"),[1] willfully and negligently failed to comply with the

---

[1] Trans Union is the only remaining defendant. The other defendants, Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"), have been dismissed. *See* dockets # 37 and # 60.

1 - FINDINGS AND RECOMMENDATION

requirements of the Fair Credit Reporting Act ("FCRA"), 15 USC §§ 1681-1681t, and is liable

for her damages and attorney fees arising out of its allegedly inaccurate consumer credit report.

This court has original jurisdiction pursuant to 15 USC § 1681p.

Trans Union has filed a Motion for Partial Summary Judgment (docket # 48) against both

of Rothery's claims for negligent and willful violations of: (1) 15 USC § 1681e(b) for failing to

follow reasonable procedures to assure maximum possible accuracy of the information in

consumer reports; and (2) 15 USC § 1681i for failing to comply with the reinvestigation

requirements with respect to Rothery's March 10, 2003 dispute.

For the reasons that follow, the motion should be granted in part on the claim for

violation of 15 USC § 1681e(b) with respect to two accounts and otherwise should be denied.

## <u>LEGAL STANDARDS</u>

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any

material fact and "the moving party is entitled to judgment as a matter of law." The moving

party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986). Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing

FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but

only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047,

1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely

colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.

*United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*,

493 US 809 (1989) (emphasis in original) (citation omitted).

2 - FINDINGS AND RECOMMENDATION

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 631 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 631.

## FACTS

A review of the parties' concise statements of material facts, as well as the other materials submitted by the parties, including affidavits, declarations, and deposition excerpts,[2] reveals the following facts.

In June or July 2002, Rothery sought a mortgage from Freedom Mortgage to buy a house. Rothery Decl, ¶ 2. On about July 23, 2002, she learned that inaccurate and derogatory information appeared on her credit report. *Id.* She obtained a copy of her credit report and was distressed because she did not know how the false information had been placed onto her credit report or how to have it removed. *Id.* She worried that she would not be able to get a loan for the house she wanted to buy, and felt embarrassed and humiliated having the Freedom Mortgage employees think that she had dozens of collection accounts and bad credit. *Id.*

Freedom Mortgage had obtained Rothery's credit report from CBC Companies ("CBC"), a tri-merge company that is not a party to this case. CBC had requested Rothery's consumer credit reports from Trans Union, Equifax and Experian, and then had combined this information into a tri-merge report through an automated procedure. Pollino Depo, p. 4; Pollino Decl, ¶ 3.

---

[2] Both parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit, declaration or page(s) of the deposition transcript. All other citations are to the exhibit number of the parties' submissions.

3 - FINDINGS AND RECOMMENDATION

Trans Union, Equifax and Experian are the three national credit reporting agencies. Nicodemus Decl, ¶ 2.  They provide consumer credit reports to subscribers who use the information to make credit-related decisions.  *Id.*  Trans Union collects commercial information from its subscribers and includes this information on credit reports.  *Id* at ¶ 4.  Subscribers report credit information concerning individual consumers ("tradelines") to Trans Union, along with the consumers' identifying information associated with that particular tradeline.  *Id.*

On July 24, 2002, Rothery called Trans Union.  *Id* at ¶ 11; Bradley Decl, Ex I, p. 6.  She went through the copy of the tri-merge credit report with the Trans Union employee and stated that certain accounts were not hers and others were being reported incorrectly.  Rothery Decl, ¶ 3.[3]  Rothery disputed the following accounts as not hers:          "CMPTR CHK VR" (two accounts);

seven "COLLECTION" accounts associated with "HOLLYWOOD ENT," "BLOCKBUSTER VID" and "MERVYNS;" "ELLIOTTBAYAD" (one account); "JBA SERVICES" (two accounts); "MARLIN INTGR" (five accounts); "UNITED COLL" (one account); "DISCOVER FINANCIAL SERVICE" (one account); and "CAPITAL 1 BK" (two accounts).  *Id.*  Rothery acknowledged that the "ATLASFINSRV" ("Atlas") account belonged to her, but disputed it as inaccurate.  *Id.*  The Trans Union employee told her that these accounts, with the exception of Discover and Atlas, were not on her credit report.  *Id.*  With regard to the Discover and Atlas

---

[3]  Trans Union admits that Rothery called and spoke with a Trans Union employee on July 24, 2002, but denies that Rothery specifically told the employee that certain accounts on the credit report were not hers and that other accounts were being reported incorrectly.

4 - FINDINGS AND RECOMMENDATION

accounts, the Trans Union employee told Rothery that she needed to talk directly to those companies. *Id.*[4]

Most of the accounts Rothery had disputed as not hers belonged to a Seattle man named Samuel J. Weyer ("Weyer"). Baxter Decl in Support of Plaintiff's Sur-Reply, p. TU00520. Trans Union's database maintained a consumer file on Weyer that included the following accounts: "CMPTR CHK VR" (two accounts); five collection accounts associated with "HOLLYWOOD ENT" and "BLOCKBUSTER VID;" "ELLIOTTBAYAD" (one account); "JBA SERVICES" (two accounts); "MARLIN INTGR" (five accounts); "UNITED COLL" (one account); and "CAPITAL 1 BK" (one account). *Id.* The Weyer file listed Rothery's social security number as belonging to Weyer, listed Rothery's old Portland addresses, and noted that Rothery's name (appearing as "Rothery, Sam, A") was an *aka* for Weyer. *Id.*

The Trans Union operator who answered the call from Rothery on July 24, 2002, thought that Rothery's information might be mixed with another consumer. Nicodemus Depo, p. 121. The operator made the following entry in the Comments section of Rothery's file: "did not pull file" and "consumer may call back." *Id* at 119-20.

In response to Rothery's request, Trans Union updated her telephone and address information and added a fraud victim alert to her credit file with a four-year expiration date. Nicodemus Decl, ¶ 11. Trans Union mailed Rothery a copy of her consumer disclosure report that same day. *Id.* A review of this document reveals that Trans Union did not send Rothery a copy of Weyer's file. Nicodemus Depo, Ex 3.

---

[4] Trans Union denies that its employee told Rothery that the Discover and Atlas accounts were not on her credit report and that Rothery would have to call those companies herself.

5 - FINDINGS AND RECOMMENDATION

After the conversation with the Trans Union operator, Rothery obtained a new copy of her credit report on August 5, 2002.  Rothery Decl, ¶ 4.[5]  She was very upset to discover that the accounts that the Trans Union operator had said were not on her credit report were still there.  *Id.*  As a result of the inaccurate information on her credit report, Rothery was unable to proceed with her loan application and lost the home she was hoping to buy.  *Id.*[6]  Rothery was distressed about losing the loan and the house.  *Id* at ¶ 3.  She was forced to purchase a smaller home by using a different lender who would ignore the false items on her credit report.  *Id*; Sami Ann Rothery Decl ("SA Rothery Decl"), ¶ 2.

Rothery followed the Trans Union operator's instructions and contacted some of the creditors directly, spending many stressful hours trying to work with these companies.  Rothery Decl, ¶ 5.[7]  She would not have tried to repair her credit in that manner had Trans Union's employee not told her that she had to contact the creditors directly.  *Id* at ¶ 3.

Between July 24, 2002, and March 10, 2003, Trans Union has no record of receiving any communications from Rothery.  Nicodemus Decl, ¶ 12; Bradley Decl, Ex I.[8]

On March 10, 2003, Trans Union received a dispute from Rothery through its internet website.  Nicodemus Decl, ¶ 12.  Rothery disputed the first name of "Samuel" and alias of

---

[5]  Trans Union denies that Rothery obtained another copy of her report from Trans Union between July 24, 2002, and March 10, 2003.

[6]  Trans Union denies that such loss was based upon errors in a Trans Union report or upon errors reported by Trans Union, as opposed to other agencies.

[7]  Trans Union denies these allegations without further comment.

[8]  Although admitting this fact, Rothery states that in January 2003, she obtained a new copy of her credit report, that Trans Union was still reporting inaccurate information about her, that she wrote to Trans Union on or about January 26, 2003, disputing false information that appeared on her credit report, and that she did not receive a response.  Rothery Decl, ¶ 6; SA Rothery Decl, ¶ 3.  However, Rothery sent the letter to an address given by her former attorney and not to the address Trans Union supplied to her.  Rothery Depo, pp. 88-89.  A letter Rothery wrote to Trans Union in February 2003 was also sent to the wrong address and returned to her.  *Id* at 100-101.

"Samuel J. Weyer" as not hers and denied using the address of 4400 SE Naef Rd, Apt. 28, in

Portland, Oregon.  *Id.*  Rothery also challenged the ownership of four accounts (Capital One,

Citifinancial, US Bancorp and Washington Mutual) that she believed were appearing in her

credit file.  *Id.*

      In response, Trans Union pulled Rothery's credit file on March 17, 2003.  *Id* at ¶ 13.

Trans Union has offered what it purports to be a copy of Rothery's March 17, 2003 credit file.

*See* Nicodemus Decl, Ex B.  On that report, the Citifinancial, US Bancorp, and Washington

Mutual accounts did not appear as adverse, showing that Rothery was "paying as agreed."  *Id.*

That report shows no Capital One account.  *Id.*

      Rothery's March 17, 2003 credit file also displayed four other adverse accounts due to

collection, late payment, and charge-off.  *Id* at ¶ 14, citing Exhibit B (Discover Financial

account, charged off as a bad debt; We Collect Inc., a collection account for Health First Medical

Group; Capital Credit and Collection, in payment after a charge off/collection for Portland ER

Physicians; and M. Ward/MEGA, an account with two late payments).  She did not dispute these

four derogatory accounts with Trans Union at that time.  *Id.*[9]  Rothery admits that the M.

Ward/MEGA account was accurate.  Rothery Depo, p. 60.

      Trans Union sent consumer dispute verification ("CDV") forms to Washington Mutual,

Citifinancial, and US Bancorp to reinvestigate the accuracy of the information being reported

regarding Rothery.  Nicodemus Decl, ¶ 15.  On April 7, 2003, Trans Union completed its

investigation.  Because Citifinancial and Washington Mutual did not respond to the CDV within

---

[9] Rothery alleges she did not dispute some inaccurate accounts, such as the Atlas and Discover accounts, because Trans Union's employee had told her that she had to contact those companies directly.  Trans Union denies that its employee made such statements.

7 - FINDINGS AND RECOMMENDATION

30 days, Trans Union deleted these accounts.  *Id* at ¶ 16.  Trans Union also deleted the US Bancorp account based on the age of the account.  *Id.*

On April 7, 2003, Trans Union mailed Rothery a copy of her consumer disclosure reflecting the results of Trans Union's investigation.  *Id* at ¶ 17.  The updated disclosure showed the deletion of three accounts (Washington Mutual, Citifinancial, and US Bancorp) and an updated address for Rothery.  *Id.*

In February 2004, Rothery attempted to get a cell phone from T-Mobile.  Rothery Decl, ¶ 9.  The T-Mobile employee tried to request her credit report, but was not able to do so because of a fraud alert.  *Id.*  Rothery was told to go home and wait for a phone call to authorize the credit report to be sent.  *Id.*  When she did not receive a call, Rothery returned to the T-Mobile store but could not get a phone.  *Id.*  She later discovered that the phone number Trans Union was instructing creditors to call was incorrect.  *Id.*[10]  This was very frustrating and stressful for Rothery and only compounded her growing distress.  *Id.*  She felt embarrassed and humiliated having to deal with this in front of the T-Mobile employee.  *Id*; SA Rothery Decl, ¶ 5.

Rothery did not seek credit that she otherwise might have because she knew that false and derogatory accounts would be on her credit report and did not want to be humiliated in front of creditors.  Rothery Decl, ¶ 10.  She did not want to deal with the stress of trying to explain the circumstances of derogatory information in her credit reports.  *Id.*  She felt it would be futile to seek credit because she would not qualify for it or would be offered credit on worse terms than if her credit report were accurate.  *Id.*

## DISCUSSION

---

[10] Trans Union denies that T-Mobile obtained a Trans Union credit report in February 2004.

8 - FINDINGS AND RECOMMENDATION

Trans Union moves for partial summary judgment on the basis that: (1) Rothery cannot maintain a claim against Trans Union under 15 USC § 1681e(b); and (2) Trans Union fully complied with its reinvestigation duties under 15 USC § 1681i regarding Rothery's March 17, 2003 disclosure.

**I.    FCRA**

The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 USC § 1681(b). The FCRA imposes requirements on "consumer reporting agencies" or "users of information" furnished by consumer reporting agencies. 15 USC § 1681h (regarding conditions and form of disclosure to consumers). A "consumer reporting agency" includes any person or organization that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties." 15 USC § 1681a(f). A "consumer report" is:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>> (A) credit or insurance to be used primarily for personal, family, or
>>> household purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

15 USC § 1681a(d)(1).

9 - FINDINGS AND RECOMMENDATION

The parties agree that Trans Union is a "consumer reporting agency" and subject to the requirements of FCRA.  A consumer has a private right of action for willful and negligent noncompliance with any duty imposed by the FCRA and may recover actual damages and attorney fees and costs, as well as punitive damages for willful noncompliance.  15 USC §§ 1681n & 1681o.  "[W]illful" as an act "done knowingly or intentionally, or is recklessly committed with a conscious disregard for the rights of others."  *Harris v. Equifax Credit Info. Serv., Inc.*, 2003 WL 23962280, *2 (D Or 2003) (internal quotations and citations omitted).

## II.    Violation of 15 USC § 1681e(b)

Rothery claims that as a result of Trans Union's unreasonable procedures, several inaccuracies appeared on her CBC tri-merge report, including accounts that belonged to Weyer and accounts that were reported incorrectly.  Trans Union contends that Rothery cannot show that it maintained unreasonable procedures in violation of 15 USC § 1681e(b), and even if it did, she cannot prove that her damages were attributable to its actions or omissions.

### A.    Legal Standard

When preparing consumer reports, consumer reporting agencies "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 USC § 1681e(b).  A court must first decide whether the preparing agency is liable *before* it determines whether the plaintiff has suffered recoverable damages.  *Guimond v. Trans Union Credit Info. Co.*, 45 F3d 1329, 1334 (9th Cir 1995).  The plaintiff must bring forward evidence from which a reasonable trier of fact could infer that defendant's violation of 15 USC § 1681e(b) was a "substantial factor" in causing the alleged damages.  *Philbin v. Trans Union*, 101 F3d 957, 968 (3rd Cir 1996).

10 - FINDINGS AND RECOMMENDATION

To establish a *prima facie* violation of 15 USC § 1681e(b), a plaintiff "must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond*, 45 F3d at 1333 (citation omitted). Even if the plaintiff succeeds in making a *prima facie* case, "an agency can escape liability if it establishes that the report containing inaccuracies was generated despite the agency's following reasonable procedures." *Id*. The inquiry is whether the agency's procedures for preparing a customer's file are reasonably designed to prevent inaccuracies and, if so, whether the agency actually follows its own procedures. *Id* at 1334. These are jury questions "in the overwhelming majority of cases." *Id* at 1333.

**B.    Analysis**

**1.    *Prima Facie* Case**

To establish a *prima facie* violation of 15 USC § 1681e(b), Rothery must present evidence "tending to show" that a credit reporting agency [Trans Union] prepared a [consumer] report containing inaccurate information." *Guimond*, 45 F3d at 1333. It is not enough to show that the report contained errors; Rothery also must present evidence that Trans Union *prepared* the report which contained the errors.

Freedom Mortgage obtained the inaccurate information from CBC. CBC, in turn, requested Rothery's consumer credit reports from Trans Union, Equifax and Experian. CBC does not store credit information or credit files for consumers; instead, it requests consumer credit reports from Trans Union, Equifax and Experian, and combines this information into a tri-merge report through an automated procedure. Pollino Depo, p.4; Pollino Decl, ¶ 3.[11] Therefore,

---

[11] Although Trans Union disputes the allegation that CBC does not store credit information and credit files from consumers, it offers no source for its position. Moreover, the evidence must be viewed in the light most favorable to Rothery.

the inaccuracies on Rothery's consumer credit report would be caused either by: (1) Trans Union, Equifax and/or Experian reporting inaccurate information to CBC; or (2) CBC inaccurately merging correct data from these three sources.

### a.    Discover and Atlas Accounts

Rothery disputes both the Discover and Atlas accounts which she alleges Trans Union reported incorrectly. Trans Union does not contest the inaccuracy of these accounts. Therefore, Rothery has met her *prima facie* burden of proof with respect to these two accounts. However, as discussed below, Trans Union maintains it employed reasonable procedures in preparing a consumer report containing these accounts.

### b.    Weyer Accounts

Rothery has offered evidence tending to show that Trans Union sent derogatory information belonging to another person named Wyer in response for CBC's request for Rothery's credit report.

CBC's representative, Annette Pollino ("Pollino"), reviewed copies of the CBC tri-merge reports prepared for Rothery dated July 24, 2002 and August 5, 2002. According to Pollino, CBC received two separate credit files from Trans Union in response to CBC's request for Rothery's credit report. Pollino Depo, p. 34. Pollino identified various derogatory accounts in the tri-merge reports whose source was Trans Union based on the initials "TRU01" and "TRU02" added by CBC next to the accounts. *Id* at 36.[12]

---

[12] Pollino explained that CBC adds initials identifying the source of each piece of data included in the tri-merge report: "TRU" for Trans Union, "EFX" for Equifax and "XPN" for Experian.

Most of the derogatory accounts on the tri-merge report that Rothery now disputes as not hers belong to Weyer and appear in Weyer's file within Trans Union's database.  Baxter Decl in Support of Plaintiff's Sur-Reply, p. TU00520.

Furthermore, a JBA Services representative who viewed the two JBA collection accounts appearing on Rothery's tri-merge report, testified that Rothery did not have an account with JBA Services and identified the derogatory accounts as belonging to Weyer.  Hyde Depo, pp. 11-12.  JBA reported Weyer accounts in Weyer's name and his Seattle address to Trans Union.  *Id* at 12; Hyde Depo, Ex 2.  CBC identified Trans Union as the only reporting source of the JBA accounts.  Pollino Depo, p. 14 & Ex 1, p. 4.

Rothery has met the low threshold of her *prima facie* case.  She has offered evidence that Trans Union prepared a consumer file for Weyer which contained false information, namely Rothery's social security number, her name appearing as an *aka*, and her old addresses.  The evidence from JBA tends to show that Trans Union received information which did not link Weyer to Rothery, but Trans Union nevertheless proceeded to transmit that information to CBC in response to its request for Rothery's credit report.  As a result, Trans Union prepared a report for CBC that contained inaccurate information about Rothery.

### 2.    Reasonable Procedures

Even if Rothery satisfies her *prima facie* case for a violation of 18 USC § 1681e(b), Trans Union argues that it escapes liability because it followed reasonable policies in preparing Rothery's credit report for CBC.

The law in the Ninth Circuit is unsettled as to who bears the burden of proof on the issue of reasonable procedures.[13]  However, Rothery acknowledged at oral argument that as a plaintiff, she has the burden of proof at all times.  A plaintiff need only "minimally present some evidence" to create a genuine dispute of material fact as to whether the defendant followed unreasonable procedures to survive a summary judgment motion.  *Dalton v. Capital Assoc. Ind., Inc.*, 257 F3d 409, 416 (4th Cir 2001) (citation omitted).

### a.    Discover and Atlas Accounts

Rothery states that the Discover account belonged to her ex-husband and that it appeared on her Trans Union credit report because she had a dispute with Discover concerning her responsibility for the account.  Rothery Depo, pp. 54-57.  Discover believed Rothery was a joint account holder responsible for the payments.  *Id*.  In other words, despite the inaccurate information appearing on a report prepared by Trans Union, the source of the inaccuracy was actually Discover.

Similarly, Rothery claims that the Atlas account was inaccurate because it was never sent to collection and was reported by Trans Union as placed for collection.  However, she ultimately admitted that when speaking with Atlas, she was told that Atlas had reported the account as a collection account in error.  *Id* at 58.

---

[13]  In *Guimond*, the Ninth Circuit Court of Appeals appears to suggest that a credit reporting agency has the burden of establishing that it has reasonable procedures and the inaccuracy was generated despite the fact that it followed those reasonable procedures.  45 F3d at 1333, citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F2d 1151, 1156 (11th Cir 1991). The Third Circuit notes that a reading of *Guimond* and *Cahlin* is subject to two different interpretations.  *Philbin*, 101 F3d at 965.  In contrast, the circuits which have discussed the issue in more depth have concluded that the plaintiff has the burden of proof at all times.  *See Dalton v. Capital Assoc. Indus., Inc.*, 257 F3d 409, 416 (4th Cir 2001) and cases cited therein. These cases rely on the traditional statutory interpretation rule which imposes the burden of proof on the plaintiff when the statute is silent and on the contrasting language between 15 USC § 1681e(b) and two other sections of the FCRA, 15 USC §§ 1681d(c) and 1681m(c), which explicitly place the burden of proof on the consumer reporting agency.

Thus, Trans Union reasonably relied on the information supplied by Discover and Atlas to prepare its report and the inaccuracies are attributable to the creditors.  Accordingly, Trans Union should be awarded partial summary judgment as to Rothery's claim that Trans Union violated 18 USC § 1681e(b) in its initial reporting of claims arising out of the Discover and Atlas accounts.  The question of whether Trans Union violated the requirements of 18 USC § 1681i in its reinvestigation is discussed below.

### b.    Weyer Accounts

When a customer or subscriber of Trans Union requests a consumer's credit report, it supplies the consumer's identifying information to Trans Union.  Nicodemus Decl, ¶ 5.  Trans Union inputs the identifying information provided by the subscriber into its database and all the tradelines corresponding to the consumer's identifying information are retrieved and compiled into the consumer's credit report.  *Id.*  In 2003,[14] it was Trans Union's practice that when a subscriber requested a credit report and provided identifying information which corresponded to more than one report, Trans Union prepared separate consumer reports and delivered them to the subscriber.[15]  *Id* at ¶ 6.  When Trans Union furnished more than one consumer report to the

---

[14] Trans Union's policy has since been changed, and it no longer delivers more than one file to a subscriber in response to a request for a consumer's credit report.  *Id.*

[15] Rothery has denied this and other statements concerning Trans Union's procedures on the basis of her lack of opportunity to depose Trans Union's representative or for lack of information.  The discovery deadline was November 17, 2005.  This court granted Trans Union's Unopposed Motion for Limited Extension of the Discovery Deadlines (60 days) so that Trans Union could depose Rothery, and Rothery could finish deposing Trans Union's corporate designees (docket # 47).  After Trans Union filed the current motion for partial summary judgment on December 1, 2005, Rothery filed a Motion for Leave to Conduct One Additional Deposition Prior to the Current Limited Discovery Deadline (docket # 57).  This court granted Rothery's motion and changed the due date of her response to the motion for summary judgment to 10 days after the last requested Trans Union deposition and no later than January 17, 2006 (docket # 61).  Rothery then filed an unopposed Motion for Leave to Complete FRCP 30(b) Deposition of Trans Union, which the court granted on January 17, 2006.  That deposition was scheduled for January 23, 2006.  Rothery filed her response to the current motion on January 17, 2006, and did not ask for additional time to file that response. On February 3, 2006, Rothery filed a Motion for Leave to Supplement the Record with excerpts from a deposition of a FRCP 30(b)(6) witness for Trans Union, which has been granted.  None of these deposition excerpts contradicts the facts submitted by Trans Union as to its procedures.

15 - FINDINGS AND RECOMMENDATION

customer, Trans Union clearly identified the separate reports as potentially belonging to different individuals. *Id.*

The identifying information used by CBC to request Rothery's credit report from Trans Union was not saved by either company. However, CBC's end-users electronically request credit information by supplying required identifying information, including the name, address and social security number of the consumer. Pollino Depo, p. 5. CBC then sends this information to the credit reporting agencies. *Id.* As a result, Freedom Mortgage would have entered Rothery's name, social security number and address in its request to CBC, and CBC then forwarded this information to Trans Union. If Trans Union followed its 2003 procedures, then it returned both the Rothery and Weyer files in response to the CBC request based on the social security number included in the identifying information.

Trans Union stops short of admitting that it sent any Weyer account information to CBC in response for a request for Rothery's credit report. Nevertheless, Trans Union maintains that even if it sent both Rothery's and Weyer's accounts to CBC, it employed reasonable procedures by keeping the two files separate and not merged. Trans Union relies on "snap-shots" of Weyer's file as it appeared in July 2002 showing that, despite some common identifying information between Weyer and Rothery (the same social security number, address and *aka*), the Weyer file was maintained as a separate file. Therefore, Trans Union believes that any improper merging was done by CBC. Relying on the Seventh Circuit's opinion in *Crabill v. Trans Union, LLC*, 259 F3d 662 (7th Cir 2001), Trans Union argues that, as a matter of law, it cannot be held liable for the improper merging of two accurate files by a third party.

16 - FINDINGS AND RECOMMENDATION

In *Crabill*, the plaintiff (Jerry Crabill) had a brother with a similar name (John Crabill) and a similar security number (differing by a single digit). When creditors requested information about Jerry, the defendant Trans Union also furnished information about his brother John. Trans Union's computer system treated credit requests for Jerry as credit requests for John. The Seventh Circuit found this to be a reasonable procedure because it took into account the possibility that similar files refer to the same person. *Crabill*, 259 F3d at 663.[16]

Unlike the facts in *Crabill*, Trans Union maintained two consumer files under the same social security number, one belonging to a Seattle man, the other to a Portland woman, despite knowing that a social security number can belong to only one person. Trans Union admits that it is possible Weyer stole Rothery's identity, but does not believe it had any responsibility to investigate why two different files had the same social security number. Yet it also believes that CBC, at the very least, could have inquired further as to the reason for the return of multiple files. The reasons for any such inquiry by CBC is the same reason for the same inquiry by Trans Union. Whether Trans Union or CBC or both failed to follow reasonable procedures is debatable.

Summary judgment is only appropriate if the reasonableness of the defendant's procedures is "beyond question." *Crabill*, 259 F3d at 664. This is not one of those rare cases where the credit reporting agency's procedures are clearly reasonable, and a jury is better equipped to make a finding on this issue.

---

[16] After being denied credit several times, Jerry complained to Trans Union, which continued to send both Jerry's and John's reports but added at the end of its credit reports a notation warning creditors not to confuse Jerry with John. The only creditor who denied credit received a report that mistakenly attributed information about John to Jerry. The report was prepared by a seller of credit reports which, having received separate reports on Jerry and John from Trans Union, apparently with the included warning, mistakenly merged the information in the two reports into one report. The court found there was a question of fact as to whether the Trans Union's continued policy of sending both reports, albeit with a warning, was reasonable after it had been informed about the two separate identities.

3.    **Damages**

Rothery alleges that as a result of Trans Union's violations of the FCRA, she has suffered "denial of credit, lost opportunity to receive credit, damage to her reputation, worry, fear, distress, frustration, embarrassment, and humiliation."  Amended Complaint, ¶ 7.  Trans Union contends that Rothery has failed to provide evidence proving that her alleged damages were directly related to Trans Union's unreasonable procedures.

a.    **Legal Standard**

Actual damages recoverable under 15 USC §§ 1681n and 1681o include denial of credit, loss of property, damages for emotional distress and humiliation.  *Guimond*, 45 F3d at 1333 (citations omitted).  A denial of credit, rather than mere credit inaccuracies, is not a prerequisite to recovery under FCRA.  *Id* at 1333.

As recognized by *Acton v. Bank One Corp.*, 293 F Supp 2d 1092, 1101 (D Ariz 2003), "[t]he Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA."  As discussed in *Acton*, the Ninth Circuit has stated in other contexts that,  "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court."  *Id* at 1101, *citing Zhang v. Am. Gem Seafoods, Inc.*, 339 F3d 1020, 1040 (9th Cir 2003), *cert denied*, 541 US 902 (2004) (holding in a discrimination action that the plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages") (ellipsis and citations omitted); *see also Johnson v. Hale*, 13 F3d 1351, 1352-53 (9th Cir 1994) (recognizing that "compensatory damages may be awarded for humiliation and emotional distress established

by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of

economic loss or mental or physical symptoms").

///

///

///

> **b.** **Analysis**

Assuming *arguendo* that a jury would find that Trans Union committed a violation of the

FCRA, the issue is whether Rothery has offered enough evidence to survive summary judgment

that Trans Union caused her alleged damages.

Rothery takes responsibility for one derogatory account (Montgomery Ward because of

two late payments), and Trans Union is not at fault for two other derogatory accounts (Atlas and

Discover) which were reported incorrectly.  As to those derogatory accounts, Rothery is unable

to prove any damages directly related to Trans Union's failure to follow reasonable procedures.

Trans Union also argues that Rothery has offered no proof that she suffered a denial of

credit due to errors committed by Trans Union.  After combing the record, Trans Union finds

only one letter in which a creditor (Citibank) denied credit to Rothery based on her credit report

and that credit report was prepared by Equifax.  *See* Bradley Decl, Ex J.  Rothery responds that

early in the process Freedom Mortgage told her that she would be denied credit and, as a result,

she lost the home she was attempting to buy.  While Rothery has personal knowledge of her

interactions with Freedom Mortgage, it is unclear how she knows that she lost the Freedom

Mortgage loan due in substantial part to Trans Union's violations of the FCRA.  Yet Rothery

need not submit direct evidence that an inaccuracy by Trans Union was crucial to the decision to

19 - FINDINGS AND RECOMMENDATION

deny credit.  It is "sufficient that, as with most other tort actions, a FCRA plaintiff produce

evidence from which a reasonable trier of fact could infer that the inaccurate entry was 'a

substantial factor' that brought about the denial of credit."  *Philbin*, 101 F3d at 968.  Here a

reasonable jury could infer that Freedom Mortgage was referring to the inaccurate adverse

information concerning Weyer supplied by Trans Union to CBC.

Furthermore, a denial of credit is not mandatory in order to award emotional distress,

humiliation and loss of opportunity damages.  *Guimond*, 45 F3d at 1333.  According to her own

subjective account and the declaration of her mother, Rothery has presented evidence of

emotional distress, humiliation, damage to reputation and loss of opportunities as a result of the

reporting of false information, her efforts to dispute the false information, and the aftermath of

her failed efforts.  Given the low evidentiary burden to survive summary judgment, this evidence

is sufficient to defeat Trans Union's argument that Rothery's 15 USC § 1681e(b) claim fails on

the issue of causation.

**4.    Reasonableness of Trans Union's Reinvestigation Procedures After
Rothery's Alleged July 2002 and January 2003 Disputes**

Rothery alleges that Trans Union violated 15 USC § 1681e(b) by failing to follow

reasonable reinvestigation procedures in the wake of Rothery disputing her credit report with

Trans Union on July 24, 2002 and in January 2003.  She contends that every violation of 15 USC

§ 1681i, regarding reinvestigation procedures by credit reporting agencies, is also a violation of

15 USC § 1681e(b) for not following reasonable procedures in preparing a consumer report to

assure maximum possible accuracy.

It is not readily apparent why a violation under 15 USC § 1681i should also be

interpreted as a violation under 15 USC § 1681e(b), and Rothery fails to offer any legal authority

20 - FINDINGS AND RECOMMENDATION

or public policy argument in support of her position.  Moreover, 15 USC § 1681i appears to offer

enough protection to consumers on its own, as it requires the agency to use reasonable

procedures in its reinvestigation ("conduct a reasonable reinvestigation").  Because Rothery has

not supported her argument with any authority or compelling public policy reason, this court will

not consider a failure to follow reasonable reinvestigation procedures as a violation of 15 USC §

1681e(b).

**II.**    **Violation of 15 USC § 1681i**

Trans Union acknowledges that questions of fact exist regarding its reinvestigation of the

July 2002 and January 2003 disputes submitted by Rothery and seeks summary judgment against

Rothery's claim for  violating 15 USC § 1681i only with regard to the March 10, 2003 dispute.

The elements of a claim under 15 USC § 1681i(a) are:

> (1) The plaintiff's credit file contains inaccurate or incomplete
> information.
> (2) The plaintiff notified the credit reporting agency directly of the
> inaccurate or incomplete information.
> (3) The plaintiff's dispute is not frivolous or irrelevant.
> (4) The credit reporting agency failed to respond to the plaintiff's dispute.
>
> (5) The failure to reinvestigate caused the consumer to suffer damages.
> (6) Actual damages resulted to the plaintiff.  Actual damages may include
> damages for humiliation, mental distress, and injury to reputation and
> creditworthiness, even if the plaintiff has offered no out of pocket
> expenses.

*Thomas v. Trans Union, LLC*, 197 F Supp 2d 1233, 1236 (D Or 2002) (citations omitted).

On March 10, 2003, Rothery disputed the following information with Trans Union:  the

first name "Samuel," the alias "Samuel J. Weyer," the address 4400 SE Naef Rd, Apt. 28,

Portland, Oregon, and the ownership of the Capital One, Citifinancial, US Bancorp, and

Washington Mutual accounts.  Nicodemus Decl, ¶ 12.  Rothery transmitted this dispute Trans

Union's website, and was required to input the following identifying information:  name, social

security number, address, previous address, home phone, employer, birth date and email address.

*Id*, Ex A.

     Rothery testified as follows concerning this dispute:

> Q:  So Trans Union deleted three out of your four accounts.  And the
> Capital One account, there is no information concerning that account, is
> there?
> A:  No.
> Q:  Did you know, when you sent the March 10th, 2003 dispute to Trans
> Union, that the Capital One account was not appearing on your Trans
> Union credit report?
> A:  I'm not really sure. . .
> Q:  And Trans Union sent you the results of the investigation, the results
> of your dispute within 30 days of your dispute, didn't they?
> A:  Yes.
> Q:  And when you received Exhibit 16, this April 27, 2003 report, were
> you satisfied with Trans Union's conduct with respect to that dispute?
> A:  It was okay.
> Q:  Is there anything they didn't do right?
> A:  They didn't make any mention of the Capital One, which I don't know
> why they did not.
> Q:  Anything else?
> A:  Not really.

Rothery Depo, pp. 109-10.

     The deposition took place before additional discovery revealed that Weyer's file in Trans

Union's database contained much of Rothery's identifying information, in particular her social

security number, her last name as an *aka* and her old address.  Also in Weyer's file was the

Capital One account that Rothery had disputed on March 10, 2003.

     Trans Union maintains it could not find the Capital One account when it investigated

Rothery's dispute.  However, as early as July 2002, the Trans Union operator believed Rothery's

information might be mixed with another file.  Moreover, the identifying information that Trans

22 - FINDINGS AND RECOMMENDATION

Union *required* Rothery to enter as part of the dispute process included Rothery's social security number and last name.  It is unclear why Trans Union would ask for Rothery's social security number and last name, and then not use these identifiers in its investigation.  Using them would have led Trans Union to the Weyer file and the disputed Capital One account, the disputed *aka* and the disputed Washington residence.  Whether under these circumstances, the reinvestigation by Trans Union was reasonable is a an issue that should be resolved at trial.

## RECOMMENDATION

For the reasons stated above, Trans Union's Motion for Partial Summary Judgment (docket # 48) should be granted as to the portion of the 15 USC § 1681e(b) claims which are based on the Atlas and Discover accounts, and otherwise should be denied.

## SCHEDULING ORDER

Objections to this Findings and Recommendation, if any, are due April 27, 2006.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this 6th day of April, 2006.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

23 - FINDINGS AND RECOMMENDATION